## ROXANA PETROLEUM CORPORATION v. SUTTER et al.

Circuit Court of Appeals, Eighth Circuit.
July 30, 1928.

No. 8090.

William K. Koerner, of St. Louis, Mo. (Koerner, Fahey & Young and Milton R. Stahl, all of St. Louis, Mo., on the brief), for appellant.

H. W. Hart, of Wichita, Kan. (Charles G. Yankey, John Gleason, Kenneth Cox, John Gregory Sears, Glenn Porter, Enos E. Hook, and W. G. McDonald, all of Wichita, Kan., on the brief), for appellees.

Before LEWIS, Circuit Judge, and PHILLIPS and JOHN B. SANBORN, District Judges.

PHILLIPS, District Judge. This is an appeal from a decree in a suit in equity, brought by the Roxana Petroleum Corporation against O. E. Sutter, H. H. Birkett, and the Derby Oil Company. By its bill, the Roxana Corporation sought a decree adjudging that it had the exclusive right, under an oil and gas lease running from Louie Fritz to it, to mine, to operate for, and to produce oil and gas from a certain tract of land theretofore deeded to the Wichita & Midland Valley Railroad Company for a right of way, and enjoining the defendants from exploring, mining and operating for oil and gas upon such right of way tract.

After alleging the jurisdictional facts, the bill in part read as follows:

"Second. That one, Adolph Blank, heretofore, on or about March 20, 1908, acquired the fee-simple title to out-lots twenty-six (26) and twenty-seven (27) and all of blocks eighty-seven (87) and eighty-eight (88), together with all abutting streets and alleys, all in the West division of the city of Oxford, Kansas, as shown by the recorded plat thereof; * * * that said Adolph Blank is the common source of title of complainant and respondents.

"Third.. That out-lots twenty-six (26) and twenty-seven (27) and blocks eighty-seven (87) and eighty-eight (88) hereinabove referred to were originally divided by Vine street and Pacific avenue; * * * that an alley according to said plat originally ran through said blocks eighty-seven (87) and eighty-eight (88); that long prior to the date said land was conveyed to Adolph Blank, to wit: in the year 1877, said Vine street and Pacific avenue were vacated by the Legislature of the state of Kansas, and all the alleys running through said blocks eighty-seven (87) and eighty-eight (88) were by the same act vacated, and the title to said streets and alleys was vested by said act in the then adjacent property owners.

"Fourth. That long prior to the date said Adolph Blank acquired said property, out-lots twenty-six (26) and twenty-seven (27) and blocks eighty-seven (87) and eighty-eight (88)· and the streets adjacent thereto and the alleys through said blocks eighty-seven (87) and eighty-eight (88) were one solid body of land and had been farmed and worked as a solid body of land; that the description of said lands as out-lots twenty-six (26) and twenty-seven (27) and blocks eighty-seven (87) and eighty-eight (88) in said deed to said Adolph Blank covered and included the vacated streets and alleys separating and bounding said out-lots and blocks."

The bill then pleaded that Adolph Blank and Sarah O. Blank, on June 5, 1911, conveyed to the Wichita & Midland Valley Railroad Company for right of way purposes the tract of land involved herein, and attached as an exhibit to the bill a copy of the deed of conveyance. The description in such deed reads as follows:

"The east one-half of blocks eighty-seven (87) and eighty-eight (88) in the city of Oxford, more particularly described as a strip of land one hundred ninety-five (195) feet in width, lying west of and adjacent to the center line of said railroad as now located in Colorado street along the east side of said blocks, with the excepting of a rectangular piece of land in the northwest corner of said tract twenty (20) feet wide, measured north and south and one hundred seventy (170) feet long, measured east and west, containing in all three (3) and 46/100 acres."

The bill further, in part, read as follows:

"Sixth. That by deed dated December 21, 1917, * * * said Adolph Blank and Sarah O. Blank, his wife, conveyed to E. C. Lyman a tract of land described in said deed as follows: 'Out-lots 26 and 27 and lots 7, 8, 9, 10, 11 and 12 in block 87, and lots 7, 8, 9, 10, 11 and 12, in block 88 in the West division of the city of Oxford;' that said conveyance included the abutting vacated streets and alleys and contained thirteen and three-tenths (13.3) acres of land, more or less; that said land so conveyed was adjacent to and bounded on the east (E) by the strip of land theretofore conveyed as aforesaid by Adolph Blank and wife to The Wichita and Midland Valley Railroad Company for a right of way; that by said deed Adolph Blank and wife conveyed to the said E. C. Lyman all their right, title and interest in and to said railroad right of way and no interest remained in said Adolph Blank and wife in and to said railroad right of way.

"Seventh. That by a series of conveyances the said land thus conveyed to said E. C. Lyman by said Adolph Blank and wife, passed to one Louie Fritz; that said Louie Fritz and Nellie Fritz, his wife, on November 24, 1923, executed an oil and gas lease to Roxana Petroleum Corporation on out-lots 26 and 27 in the West division of the city of Oxford, Kansas, and lots 7 to 12, inclusive, in block 87, and lots 7 to 12, inclusive, in block 88, in West division of the city of Oxford, Kansas, being the same description included in the deed from Adolph Blank and wife to E. C. Lyman and the same description contained in the chain of title from said E. C. Lyman to the said Louie Fritz; * * * that at the date Louie Fritz and wife executed said oil and gas lease to Roxana Petroleum Corporation they owned the said railroad right of way subject to the railroad easement thereover; and that said oil and gas lease to complainant herein included and covered all the interest of Louie Fritz and wife in and to said land and said right of way strip is covered and included by said oil and gas lease.

"Eighth. That on the 25th day of May, 1927, Adolph Blank and wife, Sarah O. Blank, executed a quitclaim deed conveying all their right, title and interest in and to said railroad right of way to respondent, H. H. Birkett, reserving to grantors one-sixteenth (1/16) of the oil and gas which might be produced from said land, and with no interest in the oil and gas lease rights, rentals or bonuses; * * * that at the date of said conveyance the said Adolph Blank and Sarah O. Blank had no right, title or interest in and to said railroad right of way, but that the fee in said railroad right of way was owned by Louie Fritz, your complainant's lessor, and the exclusive right to explore for oil and gas, and drill oil and gas wells

in and on said railroad right of way, was in your complainant herein; that Louie Fritz and Nellie Fritz, his wife, on July 19, 1927, quitclaimed all their interest in said right of way strip to H. H. Birkett. * * *

"Ninth. That said H. H. Birkett, on May 31, 1927, executed an oil and gas lease covering said railroad right of way to respondent, O. E. Sutter; * * * that respondent, The Derby Oil Company, has some right or interest in said oil and gas lease unknown to your complainant herein; that respondents herein have moved upon said railroad right of way and erected a derrick thereon and are now threatening to drill oil and gas wells on said railroad right of way; that said railroad right of way is underlaid with oil and gas, and that, if respondents are permitted to drill said oil and gas wells thereon, it will drain the oil and gas from under said railroad right of way, included as hereinbefore set out, in the oil and gas lease by Louie Fritz and wife to your complainant herein; that your complainant can secure the oil and gas under said railroad right of way by drilling oil and gas wells on the lands adjoining said railroad right of way without interfering with the easement of said railroad or the use by the railroad of said right of way.

"Tenth. That your complainant owns oil and gas leases on blocks 86, 52, and 53 near to or adjacent to said railroad right of way and, if respondents herein should drill oil or gas wells on said railroad right of way, said wells will draw oil and gas from said premises and your complainant herein will be compelled to drill offset wells on said premises to prevent said drainage at great cost and expense."

The trial court sustained a motion interposed by the defendants to dismiss the bill for want of equity.

As originally platted, blocks 87 and 88 were separated by Vine street, running east and west, and the west halves and the east halves of such blocks were separated by a 20-foot alley, running north and south, and Colorado street, running north and south, adjoined such blocks on the east. Colorado street and Vine street were 90 feet in width. The distance from the east to the west boundary lines of the east halves of such blocks as originally platted was 140 feet.

Counsel for the Roxana Corporation contend that, upon the vacation of Vine street, Colorado street and such alley in 1877, they reverted to the owners of the lots adjoining them on each side in proportion to frontage, and became a part of such adjoining lots, and that therefore the right of way deed from Blank to the railroad company conveyed, not only the east half of blocks 87 and 88, as originally platted, but the east half of such 20-foot alley, that portion of Vine street which lay between the east halves of such blocks and the west half of Colorado street adjoining such blocks on the east. It further contends that Blank, in his deed to Lyman, conveyed, not only the west half of blocks 87 and 88 as originally platted, but the west half of such alley, and that portion of Vine street lying between the west halves of blocks 87 and 88.

■ It is settled law under the statutes and decisions of Kansas that, when a street or alley of a city is vacated, it reverts to the lots adjoining on each side thereof in proportion to the frontage, and becomes a part of such adjoining lot, and passes under a conveyance by the mere description of such lot by its name or number. Rowe v. Bowen, 113 Kan. 641, 215 P. 1022; Haseltine v. Nuss, 97 Kan. 228, 155 P. 55; Atchison, T. & S. F. R. R. Co. v. Patch, 28 Kan. 470; Showalter v. Southern Kansas Ry. Co., 49 Kan. 421, 32 P. 42; Challiss v. Atchison Union Depot & R. Co., 45 Kan. 398, 25 P. 894; City of Belleville v. Hallowell, 41 Kan. 192, 21 P. 105, 108.

The Roxana Corporation's contention finds support, not only in the statutes and decisions of Kansas, but also in the language of the description contained in the deed. 195 feet from the center line of the railroad would fix the eastern boundary of the tract at the center of Colorado street and the western boundary at the center of such alley.

We therefore conclude that Blank, in his deed to the railroad company, conveyed not only the east half of blocks 87 and 88, but also the west half of Colorado street, the east half of such alley, and that portion of Vine street lying between the east halves of blocks 87 and 88, and that Blank in his deed to Lyman, conveyed, not only the west half of blocks 87 and 88 as originally platted, but the west half of such alley, and that portion of Vine street lying between the west halves of blocks 87 and 88.

■ Counsel for the Roxana Corporation further contend that, when the owner conveys a tract of land abutting on a railroad right of way tract, in which such grantor owns the servient estate and the railroad the dominant estate for right of way purposes, his conveyance passes to his grantee such servient estate, unless the intention not to do so be clearly indicated. This rule finds support in the following authorities: Center Bridge Co. v. Wheeler & Howes Co., 86 Conn. 585, 86 A.

11; Wright v. Willoughby, 79 S. C. 438, 60 S. E. 971; Foster v. Foster, 81 S. C. 307, 62 S. E. 321; Boney v. Cornwell, 117 S. C. 426, 109 S. E. 271; Richardson v. Palmer, 38 N. H. 212; Church v. Stiles, 59 Vt. 642, 10 A. 674.

In the case of Bowers v. Atchison, T. & S. F. Ry. Co., 119 Kan. 202, 237 P. 913, 42 A. L. R. 228, the Supreme Court of Kansas held that a grant of land adjoining a public highway, in which the grantor owned the servient estate, carried with it the fee to the center of the highway, notwithstanding the description in the deed did not mention the highway as a boundary and the specific description by metes and bounds in the deed, carried the grant only to the adjacent boundary line of the highway, and cited with approval Van Winkle v. Van Winkle, 184 N. Y. 193, 77 N. E. 33, where the New York court applied the rule to a similar description in a deed. In giving the reason for the rule, the Kansas court said:

"Experience revealed that separate ownership of long, narrow strips of land, distinct from the territory adjoining on each side, was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated."

In stating the rule for construing the description in such deeds, the Kansas court further said:

"Defendant says Baldwin's deed disclosed no intention to convey half of the highway. This is not the interpretative test. The test is whether the deed expressed intention to exclude half the highway from the grant."

See, also, Tousley v. Galena Mining & Smelting Co., 24 Kan. 328; Challiss v. Depot & R. Co., 45 Kan. 398, 25 P. 894; A., T. & S. F. Ry. Co. v. Patch, 28 Kan. 470; Paine v. Consumers' F. & S. Co. (C. C. A. 6) 71 F. 626.

Mr. Justice Taft, then Circuit Judge, in Paine v. Consumers' Co., said:

"The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases."

The decision in Bowers v. Ry. Co., supra, shows that Kansas has adopted the general rule upon this subject, and for the same reason assigned in Paine v. Consumers' Co., supra. While Kansas has not, so far as we are able to determine, applied the rule to a conveyance of land abutting on a railroad right of way, it seems to us that the reason for the rule is equally applicable to a deed of land abutting on a railroad right of way as to a deed of land abutting on a public highway. The same narrow strip exists. It is seldom of any present value to the grantor. It is likely to be productive of disputes and litigation. The litigation in the present case is a striking example thereof.

It is therefore our conclusion that Blank in his deed to Lyman conveyed not only the land abutting upon the railroad right of way but also the servient estate in that portion of the land conveyed to the railroad company for right of way purposes, and that such servient estate passed with the other land by mesne conveyance to Louie Fritz, the present owner.

The Roxana Corporation further contends that under the rules above referred to, the oil and gas lease running from Fritz to it included the oil and gas underneath the surface of the right of way tract.

In Cushenbery v. Waite-Phillips Co., 119 Kan. 478, 240 P. 400, the court said:

"A legal description which sufficiently defines a tract of land in terms of government survey, * * * should be given no variable significance whether that description appears in a deed, an ordinary lease, an oil and gas lease, or any other instrument in which the property is the subject of any contract or transaction."

The foregoing case involved a contest between rival oil and gas lessees to certain accretions to lands of the lessors along the west bank of the Arkansas river. The patents to the grantors from the government specified certain acreages in lots of fractional sections. At the time the oil and gas leases were executed, the lessors had acquired additional acreage in substantial amount through accretions. The prior oil and gas lease described the lands in accordance with the description in the government patents. Subsequent to the making of this lease, the lessors undertook to give an oil and gas lease to the accreted lands. The court held that the original oil and gas leases covered, not only the lands originally patented, but also the accretions thereto.

If the same rule is to be applied to an oil and gas lease as to a deed, the oil and gas

lease made by Fritz to the Roxana Corporation carried with it the oil and gas underneath the surface of the right of way tract.

It is therefore our opinion that the court erred in dismissing the bill, and the decree is reversed, and the cause remanded, with instructions to enter a decree denying the motion to dismiss the bill, and adjudging the costs in this court and the court below in favor of the Roxana Corporation, and to proceed further in accordance with this opinion.